JOHN S. AND MARGARET D. KOPUNEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kopunek v. Commissioner
Docket No. 11940-84.
United States Tax Court
T.C. Memo 1987-417; 1987 Tax Ct. Memo LEXIS 414; 54 T.C.M. (CCH) 239; T.C.M. (RIA) 87417; August 24, 1987. *414 Held: Petitioners failed to substantiate the major portion of otherwise deductible travel expense; deduction disallowed for uncollected rental income not reported for Federal tax purposes; petitioners are taxable on continuation of pay pursuant to 5 U.S.C. sec. 8118 (1982) and on accumulated sick leave paid following a heart attack which precluded petitioner husband from continuing to work as a fire fighter for the Veterans Administration. John S. Kopunek, pro se. Lynn C. Washington, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in income tax for petitioners' calendar year 1980 in the amount of $ 1,351. After concessions, the issues for decision are: (1) The deductibility under section 212 [1] of expenses incurred by petitioners *416 in traveling from their residence in New York to Sarasota, Florida, to inspect and repair rental property; (2) petitioners' entitlement to a deduction in the amount of $ 1,500 for rental payments not collected from a tenant; (3) the taxability of compensation in the amount of $ 1,699 received by petitioner John Kopunek from August 20, 1980, through October 3, 1980, pursuant to 5 U.S.C. sec. 8118 (1982); and (4) the taxability of payments received by petitioner John Kopunek while on sick leave from October 4, 1980, through December 31, 1980. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. At the time the petition was filed, Mr. Kopunek resided in Sarasota, Florida, and Mrs. Kopunek resided in Blauvelt, New York. Prior to 1980, petitioners together acquired a residence on Falcon Ridge Drive in Sarasota, Florida. In 1979 the residence was rented to Shirley Kline for a period of 1 year through June 1980 at the rate of $ *417 375 per month. The tenant paid 2-1/2 months' rent, then refused to make further rental payments. Petitioners sued this tenant in the county court of Sarasota, Florida, and on February 21, 1980, recovered a judgment against Shirley Kline for $ 1,500. The unpaid rental owned by Shirley Kline was not taken into income by petitioners for Federal income tax purposes. During the period May 1, 1980, to November 1, 1980, the property was rented to David and Grace Christner who paid rent of $ 2,300. Petitioners reported $ 1,775 as rental income which sum was increased by respondent to $ 2,060 which petitioners concede to be the correct net rental income. Petitioners claim a deduction of $ 750 for lost rent for the months of January and February 1980. [2]
By the end of the Christner lease, petitioners knew that the Sarasota house needed some maintenance and repair work. On November 13, 1980, petitioners each purchased round-trip tickets *418 from Sarasota to Kennedy Airport in New York with departure from Sarasota on December 14, 1980, and return to Sarasota on January 16, 1981. Petitioners, with Mr. Kopunek's sister-in-law, traveled by automobile from their home in New York State to Sarasota during the period December 5 to December 7, 1980. They stayed near Sarasota in a private home for approximately 7 days and during that period performed some maintenance and repair work on the house. The automobile was left in Florida since petitioners intended to return in January to complete the work and re-rent the house. Using their airplane tickets, petitioners returned to New York. Mr. Kopunek thereafter returned to Sarasota where he was living at the time the petition was filed. Apparently during this period, Mr. and Mrs. Kopunek decided to separate and accordingly Mrs. Kopunek turned in the return flight portion of her ticket for credit. The round-trip air fare was $ 258 per person. Petitioners claim a deduction of $ 1,138 for the cost of travel to Sarasota and for expenses while there, including travel by automobile of an estimated 1,400 miles at 11 cents per mile, additional travel while in the vicinity of Sarasota *419 of $ 50.60, expenses for lodging at $ 25 per day and for food at $ 9.00 per day, and air fare of $ 258, one-half of the cost of each ticket. [3]
On August 19, 1980, Mr. Kopunek who was then working for the Veterans Administration as a fire fighter suffered a heart attack on the job. He was hospitalized for a period of time and then placed on leave. He has never been allowed to return to work since a fire fighter with heart trouble is deemed to have a disability that prevents his performing his job. A Form CA-1 was filed by the fire chief while Mr. Kopunek was in the hospital. [4] Form CA-1 is styled "Instructions for Completing Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation." Paragraph 3 of the form indicates that the supervisor with whom the form is filed will in due course notify the employee whether the employee's pay will continue or *420 will be terminated. Paragraph 4 provides that where pay is continued, the employing agency may require medical evidence as frequently as indicated. The parties stipulated that Mr. Kopunek received $ 1,699 as "continuation of pay" pursuant to 5 U.S.C. sec. 8118 for the period from August 20, 1980, through October 3, 1980. The parties have further stipulated that from October 4, 1980, through December 31, 1980, Mr. Kopunek received his regular wages by utilization of his sick leave, which had been accumulated while a Federal employee. At some point during the year 1981 Mr. Kopenek was retired on disability. OPINION Petitioner contend that they should be entitled to deduct $ 750 in uncollected rent for January and February 1980 on some theory analogous to a casualty or theft loss or perhaps as a worthless indebtedness. Aside from other limitations, the amount of a casualty loss is the lesser of (1) the fair market value of the property lost immediately after the casualty or (2) the adjusted basis of the property. Sec. 1.165-7(b), Income Tax Regs. On the assumption that in some fashion the claim for *421 rent represented property to which section 165 might apply, petitioners clearly had no basis in such property since the uncollected rental had not been taken into income. Therefore, they are not entitled to a deductible casualty loss. The same rule applies to a theft loss. See sec. 1.165-8(c), Income Tax Regs. The regulations applicable to a bad debt deduction under section 166 are even more specific. Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year in which the deduction as a bad debt is claimed or for a prior taxable year. [Emphasis supplies. Sec. 1.166-1(e), Income Tax Regs.]
See also Gertz v. Commissioner,64 T.C. 598 (1975). We hold for respondent on this issue. The fact that petitioners received rental income for a 6-month period in 1980 from different tenants is simply irrelevant. Mr. Kopunek explained that he and Mrs. Kopunek traveled to Sarasota by automobile in order to take with them tools and supplies to perform work on the house. Respondent *422 contends that the trip was personal, being a part of a planned move at least by Mr. Kopunek from New York to Sarasota. We have no reason to disbelieve Mr. Kopunek's testimony, including his explanation that the friction between him and Mrs. Kopunek generated during the trip to Florida, and presumably while there, resulted in separation which had not been previously planned. However, there is no substantiation whatsoever for any of the costs of the automobile trip from New York to Florida or for that matter for any of the expenses incurred in Florida. Section 274 and respondent's regulations thereunder require detailed substantiation for away-from-home travel. Sec. 1.274-5, Income Tax Regs.
We are precluded by section 274 from estimating travel expenses pursuant to Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Sanford v. Commissioner,50 T.C. 823 (1968), affd. 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Accordingly, even though we believe the primary purpose of the trip to Florida was to check on the condition of the rental property and to commence the necessary cleaning and repair, we can allow *423 no deduction for the expenses incurred by petitioners in traveling from New York to Florida, while in Florida or for their lodging and meals. During that entire period petitioners were traveling away from home and subject to the requirements of section 274(d) and section 1.274-5 of respondent's regulations. The return trip from Sarasota to New York is, however, fully substantiated to the extent of air fare by the retained copy of Mr. Kopunek's ticket. The absence of Mrs. Kopunek's ticket is adequately explained and we deem her husband's ticket to be adequate substantiation for the cost of her air fare from Sarasota to New York. Accordingly, petitioners are entitled to a deduction under section 212 in the amount of $ 258, one-half each round-trip ticket. [5]
*424 Petitioners contend that the wage continuation payments received pursuant to 5 U.S.C. sec. 8118 for the period from August 20, 1980, through October 3, 1980, and the wages received thereafter by Mr. Kopunek as sick pay through the end of December 1980 are excludable from income. The authority cited by petitioners for this position is the Social Security Act and more specifically sections 209(b), (d), and (i) of 42 U.S.C. 409 (1982), as described in a manual, an extract from which was received in evidence. Section 209 of the Act defines the term "wages" for purposes of the Federal Insurance Contributions Act. Section 209(i) excludes from the term "wages" for purposes of withholding "Any payment (other than vacation and sick-pay) made to an employee after the month in which he attains age 62 if he did not work for the employer in the period for which such payment is made." This language seems to be contrary to the interpretation set forth in the exhibit. However, there is no need to resolve this apparent ambiguity since these provisions apply only to payments made pursuant to the Social Security Act. For the year 1980 Mr. Kopunek as a *425 Federal employee is governed by the provisions of title 5 of the United States Code and not by the Social Security Act. The only provisions applicable to Mr. Kopunek under which payments might be excluded from income are respectively sections 104(a) and 105(d). Section 104(a)(1) excludes from gross income "amounts received under workman's compensation acts as compensation for personal injuries or sickness." Payments under 5 U.S.C. sec. 8118 are not payments made under a workman's compensation act or a statute in the nature of a workman's compensation act. See sec. 1.104-1(b), Income Tax Regs.5 U.S.C. sec. 8118 specifically authorizes the "continuation of pay of an employee." The fact that the statute is brought into play by reason of the filing of a claim for lost wages due to a traumatic injury does not change the nature of the payments. Moreover, the legislative history pertaining to 5 U.S.C. sec. 8118 indicates that Congress did not intend for payments received pursuant to this section to be excluded from gross income. S. Rept. 93-1081 (1974), 3 U.S. Code Cong. & Admin. News 5344 (1974); see also Dyer v. Commissioner,71 T.C. 560, 563 n. 3 (1979). *426 The only other provision under which payments pursuant to 5 U.S.C. sec. 8118 might be excluded is section 105. Under section 105(d) and section 1.105-4, Income Tax Regs., payments made under wage-continuation plans may be excluded from income under certain conditions. Section 105(d)(1) specifies that the exclusion from income applies to a taxpayer who "retired on disability and, when he retired, was permanently and totally disabled." Permanent and total disability is defined in section 105(d)(4) as occurring when the individual "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." Further, an individual is not considered to be permanently and totally disabled unless he "furnishes proof of the existence thereof in such form or manner, and at such times, as the Secretary may require." Petitioners have not shown that Mr. Kopunek was permanently and totally disabled as so defined during the period during which he received payments under 5 U.S.C. sec. 8118. Moreover, section 105(d)(3) provides for a phaseout of the exclusion from income. This phaseout is 100 percent *427 for a taxpayer whose adjusted gross income exceeded $ 20,200. Petitioners' 1980 individual income tax return which is a stipulated exhibit shows that petitioners' adjusted gross income for this year was $ 40,594.63. Therefore, section 105 cannot apply in this case. Petitioners also contend that the sick leave which continued from October 4, 1980, through December 31, 1980, is excludable from income. As we have already pointed out, petitioners' arguments under the Social Security Act simply have no merit. We must nevertheless determine whether all or any portion of the sick pay received during 1980 by Mr. Kopunek is excluded from income either under section 104 or section 105. Sick leave is payable to Federal employees under 5 U.S.C. sec. 6307. This is not a workman's compensation statute; rather it provides for a continuation of wages to the extent of the accrual of sick leave while an employee is absent from his job because of illness or injury. Carman v. United States,221 Ct. Cl. 165, 602 F.2d 946, 948 (1979). Section 104 simply does not apply. Respondent concedes, however, that for purposes of section 105 Federal sick-leave payments *428 are amounts received under an accident or health plan. See Rev. Rul. 55-85, 1955-1 C.B. 15. However, as we have already pointed out in connection with the 5 U.S.C. sec. 8118 payments, section 105(d) does not apply for two reasons. Petitioners have not demonstrated that Mr. Kopunek was totally and permanently disabled. Also petitioners' income for 1980 was so large that the phrase-out provisions of section 105(d)(3) preclude any deduction. Based on the foregoing, we conclude that none of the payments received by Mr. Kopunek during the period August 20 through December 31, 1980, are excludable from income. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners recovered possession of the house from the tenant during or shortly after the end of February 1980. Hence petitioner at the trial and on brief reduced his claimed deduction to $ 750, reflecting rent for the first 2 months of 1980. ↩
3. It is not clear from this record how petitioners computed this deduction. These amounts are based on Mr. Kopunek's testimony. In their trial memorandum, petitioner claimed an additional $ 150 to cover lodging and meals between New York and Sarasota, all of which totals less than $ 1,000. ↩
4. One or more duplicates were thereafter filed. ↩
5. Petitioners placed in evidence to show their presence in Florida and paid invoice from a store by the name of Scotty's showing the purchase of yard supplies on December 12, 1980. Although it is more than likely that these supplies were used by petitioner in their maintenance and repair work, petitioners have not claimed that this sum is deductible and there is no direct testimony that the supplies were used on the Sarasota residence although it is unlikely that they were used elsewhere. Accordingly, we cannot allow this amount as a deduction. ↩